ORIGINAL

FILED

'09 FEB 27 PM 4:18

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

1  RUTAN & TUCKER, LLP
   Milford W. Dahl, Jr. (State Bar No. 367969)
2  mdahl@rutan.com
   Robert C. Braun (State Bar No. 47500)
3  bbraun@rutan.com
   Edson K. McClellan (State Bar No. 199541)
4  emcclellan@rutan.com
   Anna Kogan (State Bar No. 172320)
5  akogan@rutan.com
   611 Anton Boulevard, Fourteenth Floor
6  Costa Mesa, California 92626-1931
   Telephone: 714-641-5100
7  Facsimile:  714-546-9035

8  Attorneys for Plaintiff
   ZRII, LLC, a Delaware limited liability company
9

10                  UNITED STATES DISTRICT COURT

11                 SOUTHERN DISTRICT OF CALIFORNIA     BY FAX

12

| | |
|---|---|
| 13  ZRII, LLC, a Delaware limited liability company, | Case No. **'09 CV 0405 L RBB** |
| 14 | COMPLAINT FOR: |
| 15                Plaintiff, | (1)  **BREACH OF WRITTEN CONTRACT;** |
| 16           vs. | (2)  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| 17  LIFEVANTAGE CORPORATION, a Colorado corporation; TYLER DANIELS, an individual; MARCELL | (3)  **BREACH OF FIDUCIARY DUTY;** (4)  **INTENTIONAL INTERFERENCE WITH CONTRACTUAL** |
| 18  NIEDERHAUSER, an individual, | **RELATIONS;** |
| 19                Defendants. | (5)  **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** |
| 20 | (6)  **MISAPPROPRIATION OF TRADE SECRETS;** |
| 21 | (7)  **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT;** |
| 22 | (8)  **VIOLATION OF WIRETAP ACT;** |
| 23 | (9)  **VIOLATION OF STORED COMMUNICATION ACT;** |
| 24 | (10) **VIOLATION OF CIVIL RICO;** |
| 25 | (11) **CONVERSION;** (12) **STATUTORY UNFAIR COMPETITION; AND** |
| 26 | (13) **UNJUST ENRICHMENT AND RESTITUTION** |
| 27 | |
| 28 | **DEMAND FOR JURY TRIAL** |

Rutan & Tucker, LLP
attorneys at law

2199/027279-0001
992927.03 a02/27/09

-1-
COMPLAINT

Plaintiff Zrii, LLC ("ZRII") alleges on information and belief as follows:

**Jurisdiction and Venue**

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 (Federal Question) and 1367 (Supplemental Jurisdiction). This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., the Wiretap Act, 18 U.S.C. § 2510, et seq., the Stored Communications Act, 18 U.S.C. § 2701, et seq., and various related common law claims. This Court has jurisdiction over the subject matter of ZRII's federal claims pursuant to 28 U.S.C. section 1331. The Court has jurisdiction over ZRII's related state law claims based on 28 U.S.C. section 1367.

2.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity) because the parties to this action are all residents of different states, and the amount in controversy exceeds $75,000.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). A substantial part of the events, omissions, and acts which are the subject of this action occurred within the Southern District of California, and a substantial amount of the property that is the subject of this action is located in the Southern District of California. In addition, the principal corporate office of Defendant Lifevantage Corporation ("LIFEVANTAGE") is located within the Southern District of California.

**Parties and Jurisdiction**

4.      ZRII is a Delaware limited liability company with headquarters in Utah, and business dealings throughout the United States, including California. By multi-level marketing, ZRII sells and distributes throughout the United States and other countries health food supplements, in particular a popular drink supplement endorsed by Deepak Chopra. At all relevant times, ZRII's Chief Executive Officer has been William Farley ("FARLEY"). By investing millions of dollars, over a number of years, ZRII has developed a highly-successful distribution network that sells its dietary, herbal, health and nutritional products to end users, and this network is an integral part of its success.

5.      Defendant LIFEVANTAGE is a corporation organized under the laws of Colorado, with its principal corporate office in San Diego, California, at 11545 W. Bernardo Court, Ste. 301.  LIFEVANTAGE is a multi-level marketing company that sells and distributes health food supplements through its authorized distributors throughout the United States, including California.  As a direct marketing distributor of health food supplements, LIFEVANTAGE is a direct competitor of ZRII.  As explained in more detail below, LIFEVANTAGE induced and conspired with defendants Tyler Daniels ("DANIELS"), Marcell Niederhauser ("NIEDERHAUSER"), and other ZRII employees and distributors to breach their contracts with ZRII and abscond with ZRII's proprietary information for the benefit of LIFEVANTAGE, and to join LIFEVANTAGE as its employees or distributors.

6.      Defendant DANIELS, an individual, is a former ZRII Senior Independent Executive ("IE") and a resident of the State of Arizona.  DANIELS was a "Ten Star Independent Executive" ("10 Star"), the highest level ZRII IEs can achieve.  DANIELS, NIEDERHAUSER, and all other ZRII IEs, signed an Independent Executive Agreement ("IE Agreement"), and agreed to be bound by the ZRII Policies and Procedures.

7.      Defendant NIEDERHAUSER, an individual, is a former ZRII senior IE/distributor and a resident of the State of Vermont.  Like DANIELS, NIEDERHAUSER was a 10 Star IE and was a top ZRII producer.  By virtue of their seniority and positions, DANIELS and NIEDERHAUSER had practically unfettered access to ZRII's confidential, proprietary, and trade secret information.  (Hereinafter, LIFEVANTAGE, DANIELS, and NIEDERHAUSER are sometimes referred to collectively as "DEFENDANTS.")

8.      ZRII is informed and believes and on that basis alleges that at all times relevant to this Complaint, DEFENDANTS, and each of them, were the agents, servants, employees, alter egos, successors-in-interest, subsidiaries, affiliated companies or corporations, and joint ventures of the other DEFENDANTS, and were acting within the course, scope, and authority of each other DEFENDANT.

9.      ZRII is informed and believes and on that basis alleges that DEFENDANTS,

1 and each of them, along with other former officers, employees, and distributors of ZRII,

2 and attorneys Dallas Nordstrom and Kenneth Okazaki who performed work for

3 DEFENDANTS in furtherance of their conspiracy, formed a conspiracy among themselves

4 and others to engage in, and in fact have engaged in, the wrongful acts and omissions

5 alleged herein, and as a consequence of this conspiracy are jointly and severally liable for

6 the equitable relief and damages requested herein.  ZRII is further informed and believes

7 and on that basis alleges that DEFENDANTS acted in concert with, and with the consent

8 of, the other DEFENDANTS, and that each DEFENDANT ratified or agreed to accept the

9 benefits of the acts and omissions of the other DEFENDANTS.

10          10.     LIFEVANTAGE is headquartered in San Diego, California, and its President

11 and CEO, David Braun, resides in San Diego, California.  Moreover, one of the

12 DEFENDANTS' principal co-conspirators, Jason Domingo, a former ZRII 10 Star IE, also

13 resides in California.  Further, ZRII is informed and believes and on that basis alleges that

14 many of the DEFENDANTS' breaches, misappropriations, and other tortious acts herein

15 alleged took place in San Diego, California, or elsewhere in California.

16                              **FACTUAL BACKGROUND**

17          11.     ZRII specializes in nutritional drink supplements based primarily on the

18 Indian fruit known as Amalaki.  The success of ZRII is closely linked to the working

19 relationship between two groups; namely, the ZRII corporate management team and the

20 ZRII network of distributors, or IEs.

21          12.     The ZRII corporate management team supervises and implements customer

22 service, supply agreements and logistics with vendors, order tracking and delivery,

23 automatic shipments, information technology, payment of IE compensation, marketing

24 materials, tracking and regulatory issues, etc.  ZRII's former General Manager, Kirby

25 Zenger, was the head of ZRII's corporate management team.

26          13.     ZRII believes that the best way to market and sell its quality products is

27 through people and organizations that know and believe in the products.  The people who

28 fill that role at ZRII are the IEs.  Defendants DANIELS and NIEDERHAUSER are former

1   ZRII top-producing IEs, and are collectively referred to herein as the "DISTRIBUTOR

2   DEFENDANTS."

3       14.     Satisfied IEs talk to their friends and acquaintances about the product, those

4   friends and acquaintances become excited about the product, and talk to their friends and

5   acquaintances, etc.  As word of the benefits of ZRII's products spreads, more and more IEs

6   sign up, and the network expands.  IEs receive compensation based not only on their own

7   sales, but on the sales of those who have joined the ZRII IE network through their efforts.

8   For this reason, it is important to individual IEs to enroll others as IEs, and for those IEs to

9   enroll yet other ZRII IEs.

10      15.     In order to become an IE, the individual (or individual representing an entity

11  that will be the IE) must sign the ZRII IE Agreement.  One of the express terms of the IE

12  Agreement is that the IE will comply with the ZPP.  During the term of the IEA, the ZPP

13  prohibits ZRII IEs from recruiting or soliciting other ZRII IEs to enroll as distributors for

14  any other network marketing company.  Moreover, for a period of six months following

15  termination of an IE's IEA, the ZPP prohibits IEs from recruiting any ZRII IE to enroll as

16  a distributor of any other network marketing company, such as LIFEVANTAGE.

17      16.     IEs who enroll "under" a particular IE, including second, third, etc.

18  generations, are referred to as the "downline" or "genealogy" of a particular IE.  The

19  highest level IEs at ZRII are known as "Ten Star Independent Executives."  Defendants

20  DANIELS and NIEDERHAUSER were both 10 Stars.  Lower level IEs look to 10 Stars

21  for advice and leadership.  10 Stars are important in the ZRII organization because they

22  have significant influence over their downlines, and are critical to ZRII's efforts to expand

23  the number of active IEs.

24      17.     The DISTRIBUTOR DEFENDANTS and their co-conspirators secretly put

25  in motion an unlawful scheme to strip ZRII of value and/or destroy it through illegal

26  means.  The goal of this scheme was to coerce ZRII to be acquired at a fire-sale price or

27  take its business, and/or make it so weak that it could not continue.  DEFENDANTS are

28  still pursuing this scheme.  The following is a brief chronology of the scheme, insofar as

1   ZRII has been able to uncover it to date.  All of the acts set forth below were done in order

2   to further the DEFENDANTS' scheme to unlawfully acquire ZRII, take its business, or put

3   it out of business.

4       18.   The unlawful scheme of the DEFENDANTS and others included, *inter alia*,

5   the following acts, goals, and designs:

6       a.   On Thursday, January 29, 2009, one business day before staging a

7   mass walk-out from ZRII headquarters, the DISTRIBUTOR DEFENDANTS and other co-

8   conspirators formed a new company, Wellness Acquisition Group, LLC ("WAG"),

9   specifically for the purpose of acquiring ZRII or taking its business or engineering its

10  destruction;

11      b.   On 11:30 p.m. on Sunday night, February 1, 2009, the

12  DISTRIBUTOR DEFENDANTS (and/or those acting at their direction) entered ZRII

13  headquarters, sabotaged ZRII's computer network, and deleted key computer files;

14      c.   On Monday, February 2, 2009, the DISTRIBUTOR DEFENDANTS

15  (and/or those acting at their direction) caused ZRII employees to walk off the job so as to

16  make it impossible for ZRII to service the needs of its existing and potential IEs;

17      d.   Through their misappropriation of ZRII computer information and

18  other confidential and proprietary ZRII information, including ZRII's trade secrets,

19  DEFENDANTS converted ZRII property to their own use and benefit, and used ZRII's

20  own proprietary information to undermine and destroy ZRII;

21      e.   The DISTRIBUTOR DEFENDANTS (and/or those acting at their

22  direction) sabotaged ZRII's computer network system, including locking ZRII's CEO and

23  its vendors out of the system, interfering with ZRII's ability to access the network, and

24  wrongfully retaining ZRII passwords and other tools necessary to access the ZRII system;

25      f.   DEFENDANTS unlawfully solicited ZRII IEs to move to

26  LIFEVANTAGE, a directly competing network marketing company in the nutrition

27  industry;

28      g.   The DISTRIBUTOR DEFENDANTS and their co-conspirators tried

Rutan & Tucker, LLP
attorneys at law

2199/027279-0001
992927.03 a02/27/09

-6-
COMPLAINT

1   to coerce ZRII to allow itself to be acquired by them and an entity they had created, or to

2   destroy ZRII for the benefit of the DEFENDANTS; and

3         h.     DEFENDANTS unlawfully interfered, and are continuing to interfere,

4   with the economic and contractual relations of ZRII with its IEs, employees and others.

5         i.     DEFENDANTS engaged in their planned conspiracy to disparage

6   ZRII, its products, and Chief Executive Office to ZRII's IEs, customers, and the general

7   public.

8         j.     DEFENDANTS, in violation of securities laws, are soliciting certain

9   "inner circle" people to purchase LIFEVANTAGE stock stating that its price will

10   substantially increase once the public learns that LIFEVANTAGE has acquired ZRII's IEs

11   and other Confidential and Proprietary Information to increase LIFEVANTAGE's sales.

12                               **Defendants' Scheme to Acquire or Destroy ZRII**

13                           **Third Week of January 2009 – The Hawaii Meeting**

14         19.     During the third week of January 2009, the DISTRIBUTOR DEFENDANTS

15   participated in an incentive trip in Hawaii to review operations and discuss strategies for

16   moving ZRII forward.  The retreat ended on or about Thursday, January 22, 2009, but the

17   DISTRIBUTOR DEFENDANTS and certain other ZRII employees and distributors said

18   they wanted to stay in Hawaii for another day after the end of the retreat to work on ZRII

19   company business.  That statement was knowingly and intentionally false.

20         20.     In fact, the DISTRIBUTOR DEFENDANTS used the extra time in Hawaii to

21   secretly develop and further the illegal scheme outlined above.  On information and belief,

22   the secret scheme to acquire ZRII and/or cripple it through unlawful conduct was

23   conceived and executed on ZRII time, at ZRII expense, with ZRII assets, and using ZRII

24   employees, ZRII IEs and ZRII agents.

25         21.     On January 29, 2009, less than one week after the Hawaii retreat, the

26   DISTRIBUTOR DEFENDANTS formed WAG specifically for the purpose of furthering

27   their conspiracy to unlawfully acquire ZRII after the DISTRIBUTOR DEFENDANTS

28   misappropriated ZRII's confidential and proprietary information, staged a mass walk-out

1   from ZRII corporate headquarters, and crippled ZRII.

2       **11:30 p.m. Sunday February 1, 2009 – 3:30 a.m. Monday February 2**

3       **Distributor Defendants Secretly Sabotage the ZRII Computer Network and**

4       **Delete/Tamper with Electronic and Hard Copy Files in the Dark of Night**

5       22.    Access to the business premises of ZRII is restricted by key card. The

6   security system at ZRII logs the comings and goings of all personnel by recording when

7   key cards are used to enter the buildings.

8       23.    The key card logs at ZRII demonstrate that beginning at approximately 11:00

9   p.m. on Sunday, February 1, and continuing through approximately 3:30 a.m. on Monday,

10   February 2, 2009, the DISTRIBUTOR DEFENDANTS (and/or those at their direction)

11   entered various parts of ZRII headquarters.  At the direction of these DISTRIBUTOR

12   DEFENDANTS, ZRII IT personnel also entered various parts of the building.

13       24.    On information and belief, one or both of the DISTRIBUTOR

14   DEFENDANTS (and/or those acting at their direction) were at ZRII in the middle of the

15   night on February 1-2 to sabotage ZRII's computer and other systems, and thereby cripple

16   ZRII's ability to operate normally.  There was no legitimate business reason for these

17   DEFENDANTS and IT personnel to be at the ZRII offices from 11:30 p.m. on Sunday

18   night, February 1 through 3:30 a.m. on Monday morning, February 2.

19       25.    On information and belief, that night various members of the ZRII IT

20   department engaged in at least the following unlawful acts at the instigation and with the

21   complicity of the DISTRIBUTOR DEFENDANTS:

22       a.    They destroyed certain backups of ZRII emails;

23       b.    They changed access codes to the ZRII computer network and/or

24   disabled network accounts; and

25       c.    They functionally disabled ZRII's ability to access its own network

26   and perform normal operating functions.

27       26.    The result of the foregoing was that ZRII was for a time denied the ability to

28   access and use its own system.  Among other things, ZRII was unable to sign up IEs on its

1  website, giving the impression that ZRII was non-operational and/or teetering on the brink

2  of collapse. This sabotage further disabled the ability of certain outside vendors of ZRII

3  from accessing ZRII's network and providing needed services and information critical to

4  the ongoing operations of ZRII.

5       27.    All ZRII employees were required to sign a confidentiality/non-disclosure

6  agreement ("NDA") as a condition of their employment. Copies of the NDA were kept in

7  files in the Human Resources department of ZRII. The NDAs for some of the individual

8  defendants and other ZRII employees are no longer in the human resources files of ZRII.

9  ZRII believes that the NDAs were removed by or at the direction of one or more of the

10  Defendants.

11  **Monday, February 2, 2009**

12  **Work Stoppage and IT Lockout**

13       28.    ZRII's CEO, FARLEY, travelled to ZRII's headquarters on Monday,

14  February 2, 2009. On any normal business day prior to February 1, 2009, there would

15  have been approximately 40 employees working at ZRII corporate headquarters.

16  However, when FARLEY arrived at ZRII headquarters on February 2, he found the

17  building empty except for a few customer service staff on the second floor.

18       29.    On information and belief, Kirby Zenger (ZRII's General Manager at the

19  time) instructed ZRII corporate employees not to go to work on February 2, 2009. The

20  affected employees were told that if they did go to work, no one else would be there, and

21  that they would not have a job when the co-conspirators took over the Company.

22       30.    On February 2, 2009, at 12:17 p.m., Clint Hoaldridge, a ZRII IT employee,

23  deactivated the network logon for FARLEY, ZRII's CEO. On information and belief,

24  Hoaldridge did so at the instigation of the DISTRIBUTOR DEFENDANTS and their co-

25  conspirators.

26  **Defendants' Threats**

27       31.    On entering his office on February 2, FARLEY found the keys to seven

28  company cars, all of which ZRII had leased for the members of ZRII management.

1  FARLEY also received a voice message requesting a meeting with a group of these

2  managers and advising to bring a lawyer.  In addition, FARLEY received a letter from the

3  managers demanding that FARLEY resign and sell his controlling interest in ZRII to "the

4  management team."  In the letter, the signatories asserted that they were "joined by all 10

5  Star IEs (including the DISTRIBUTOR DEFENDANTS) and many top level managers of

6  ZRII."

7       32.    Late in the day of February 2, 2009, FARLEY received a letter by hand

8  delivery from Kenneth Okazaki, an attorney with the Salt Lake City law firm of Jones,

9  Waldo, Holbrook & McDonough.  The letter states that Mr. Okazaki represents WAG, the

10  new entity DEFENDANTS formed the Thursday preceding the walk-out, and that

11  "interested members of our client [WAG] include the executive team at ZRII and all ten

12  star distributors of ZRII."  The "ten star distributors of ZRII" included, *inter alia*,

13  Defendants DANIELS and NIEDERHAUSER.  Mr. Okazaki repeated the demand that

14  FARLEY sell his interest in ZRII.

15       33.    The letter from Mr. Okazaki enclosed a letter from the 10 Stars, including

16  DANIELS and NIEDERHAUSER.  In that letter, the 10 Stars demanded that FARLEY

17  resign and threatened that if he did not, they will "***dismantle the entire field, leader-by-***

18  ***leader.***"  They also threatened to "***take our talents to another network marketing***

19  ***company,***" expressly threatening that if FARLEY did not capitulate, "***ZRII will cease to***

20  ***exist within 30 days.***"

21       34.    The ZPP, to which all IEs including the DISTRIBUTOR DEFENDANTS

22  agreed through their respective IE Agreements, states that during the term of the IE

23  Agreement, no IE may engage "in any actual or attempted recruitment of ZRII

24  Independent Executives for other network marketing business ventures, either directly or

25  through a third party."  The ZPP further provides that all IEs agree that "for a period of six

26  months following the cancellation of an [IE Agreement], the former Independent

27  Executive may not recruit any ZRII Independent Executive . . . for another network

28  marketing program."

Rutan & Tucker, LLP
attorneys at law

**DEFENDANTS' Refusal to Return ZRII Property**

35.     On February 2, 2009, ZRII demanded that the DISTRIBUTOR DEFENDANTS immediately return all ZRII property, including, but not limited to, laptop computers and all proprietary and confidential information in their possession or control. ZRII further demanded that the individual Defendants not use, access, or disclose any proprietary information of ZRII to any person for any purpose.

36.     On information and belief, the DEFENDANTS and others have used the ZRII laptops in their possession, the proprietary data on those computers, and various other proprietary and confidential ZRII information, to conspire with each other (and others) regarding that scheme, and to further their improper scheme in many other diverse ways.

**February 3, 2009 – Continued Work Stoppage**

37.     On Tuesday, February 3, 2009, the same corporate employees of ZRII who failed to come to work on February 2 again failed to come to work. The absence of the bulk of ZRII corporate employees prevented ZRII from performing its normal business operations. On the evening of February 3, ZRII wrote to all of the ZRII employees who had not come to work on February 2 or 3, informing them that if they did not come to work on Wednesday, February 4, they would be deemed to have resigned. These individuals were also told to return all confidential ZRII information to ZRII and not to use or disclose such information in any fashion or to anyone.

38.     At the direction and encouragement of DEFENDANTS, most of the absent ZRII employees never returned to work.

**Wednesday February 4, 2009 – DEFENDANTS Instruct IEs to**

**Cancel Automatic Shipments of ZRII Products**

39.     On February 4, 2009, co-conspirator Jason Domingo ("DOMINGO"), in his capacity as a 10 Star IE and Master Distributor, wrote an email to "personally sponsored IEs." In that email, he reproduced the February 2 letter from the 10 Stars to FARLEY. He asserted that the "field leadership and corporate Executive Team" were "completely galvanized and in 100% solidarity."

1    40.    On behalf of DEFENDANTS and their co-conspirators, DOMINGO further

2    advised the IEs that the "only thing that fortifies [Farley's] control is the ability to run

3    autoships [automatic shipments to IEs] and garner its resulting revenue."

4    41.    In the same e-mail, DOMINGO told the IEs that the "10-star IEs recommend

5    you terminate your autoship effective immediately." He further told them that the biggest

6    autoship day of the month was February 5th, and that they needed to act immediately to

7    have their terminations be effective before then. He concluded the email by stating that a

8    conference call would be arranged with IEs as soon as possible.

9    42.    Autoships are recurring shipments of ZRII product to IEs that are

10   automatically shipped at periodic intervals, and are an important source of revenue for

11   ZRII. ZRII's records reveal that, as requested by DOMINGO and DEFENDANTS, many

12   IEs began to cancel autoships on Wednesday, February 4, 2009.

13   **February 5, 2009 – "Biggest Autoship Day"**

14   43.    On February 5, 2009, after the February 4 email from DOMINGO

15   announcing the conference call, Defendants DANIELS and NIEDERHAUSER sent an

16   email to the "TEAM." On information and belief, this email was sent to some or all of the

17   ZRII IEs at the direction of the DISTRIBUTOR DEFENDANTS and their co-conspirators.

18   44.    The February 5, 2009 email announced an "URGENT ZRII Call" for 8:00

19   p.m. that night with "ZRII co-founders and 10 Star IE's."

20   45.    The February 5, 2009 email stated that the "TEAM" should "disreard [sic]

21   any email stating ZRII leadership has moved" and that "we are united and stand together

22   as a team **for Zrii**." In fact, neither DANIELS or NIEDERHAUSER nor any members of

23   the former management were at that time authorized by ZRII to do anything "for ZRII," to

24   make any representations "for ZRII," or to act "for ZRII" in any way.

25   46.    On February 5, 2009, after he was clearly no longer a ZRII employee, co-

26   conspirator Marty Zenger, on behalf of DEFENDANTS, attempted to access the ZRII

27   network using his password.

28   / / /

**DEFENDANTS' Solicitation of ZRII IEs and Interference with ZRII's Operations**

47.    In furtherance of the unlawful scheme described above, DEFENDANTS have continued to pursue the scheme to destroy and damage ZRII.  As part of their continuing course of wrongful conduct, DEFENDANTS have wrongfully used ZRII confidential information to solicit and/or cause others to solicit ZRII IEs to enroll in other network marketing organizations.

48.    At a recent conference in Anaheim, California, held during the week of February 9, 2009, DEFENDANTS and/or their agents actively solicited ZRII IEs to enroll in Defendant LIFEVANTAGE.  This and related conduct has gravely impacted ZRII's ability to carry on its business with its IEs.

**Defendant LIFEVANTAGE Induces the DISTRIBUTOR DEFENDANTS and other**
**ZRII IEs to Breach Their Non-Solicitation Agreements with ZRII.**

49.    On February 16, 2009, Defendant LIFEVANTAGE posted a press release on its website, which announced "the Addition of Sales Record-Setting Network Marketing Distributors and Executives," and identified DANIELS, NIEDERHAUSER, DOMINGO, and Mr. Zenger among those joining LIFEVANTAGE.  The press release stated, among other things, that the company is "extraordinarily fortunate to join forces with Jason, Tyler, Marcell and their team."  In the press release, DOMINGO likewise referred to bringing over his "distributor team" to LIFEVANTAGE.  Defendants clearly intended for the DISTRIBUTOR DEFENDANTS and other former ZRII IEs to recruit their ZRII downlines to LIFEVANTAGE, notwithstanding their contractual prohibitions from doing this.

50.    Since the DISTRIBUTOR DEFENDANTS joined LIFEVANTAGE, DEFENDANTS have in fact continued in their scheme to illegally solicit away ZRII's distributors, and they have continued to use ZRII's proprietary and trade secret information for their own benefit.

51.    ZRII is informed and believes that LIFEVANTAGE has continued to broadcast and promote its illegal poaching of ZRII's downlines, and the expected increase

1  in sales, to attempt to inflate the value of its publicly-traded stock.

2     52.   The unlawful scheme described above, including the wrongful conduct of the

3  DEFENDANTS, individually, collectively, and in concert with others, has caused and is

4  continuing to cause irreparable harm to ZRII's relationships with its employees, IEs,

5  vendors and others.  ZRII's damages from DEFENDANTS' wrongful conduct have caused

6  damages in excess of $75 million, in an amount to be proven at trial.

7     53.   ZRII has no adequate remedy at law for the irreparable harm it has suffered

8  as a result of DEFENDANTS' unlawful scheme.

9
## FIRST COUNT

10
### For Breach of Written Contract

11
### (Against Defendants DANIELS and NIEDERHAUSER)

12     54.   ZRII incorporates by reference as though fully set forth herein all previous

13  allegations of this complaint.

14     55.   ZRII allows its distributors access to ZRII's confidential and trade secret

15  information, including distribution network, downline, and genealogy information,

16  commissions and sales reports, customer information, sales projections and business

17  forecasts, marketing strategies, product and research development information, and costs

18  of goods (ZRII's "Confidential and Trade Secret Information").  The development of

19  ZRII's distributor and customer relationships, and its Confidential and Trade Secret

20  Information, was the result of ZRII expending substantial time and resources, and is

21  information not generally known to the public or to ZRII competitors.

22     56.   Before ZRII's distributors are given access to ZRII's Confidential and Trade

23  Secret Information, ZRII requires they sign a written "Independent Executive Agreement"

24  ("IE Agreement"), in which they agree to abide to the terms of ZRII's Policies and

25  Procedures Manual ("ZPP"), which is incorporated by reference.  In the IE Agreement, the

26  distributors further agree that ZRII, in its sole discretion, may amend its Policies and

27  Procedures, and the distributors agree to abide by any subsequent amendments.

28     57.   Defendants DANIELS and NIEDERHAUSER signed written IE Agreements

1  with ZRII. True and correct copies of those agreements signed by DANIELS and

2  NIEDERHAUSER are attached as Exhibits 1 and 2, respectively, and are incorporated by

3  reference.

4        58.    The ZPP, which is incorporated by reference in the IE Agreements, obligates

5  the DISTRIBUTOR DEFENDANTS to, among other things:

6              a.    Preserve the confidentiality of ZRII's Confidential and Trade Secret

7  information;

8              b.    Refrain from using ZRII's Confidential and Trade Secret Information,

9  including its downline genealogies, to compete with ZRII, or for any purpose other than

10  promoting ZRII's products and services;

11              c.    Refrain from making any negative, disparaging, untrue or misleading

12  comments about ZRII, its products, owners, directors, officers, employees, or other

13  Distributors of ZRII; and

14              d.    For a period of six months following the termination of the IE

15  Agreement, refrain from soliciting any ZRII distributor or customer (i) to enter into any

16  business relationship with any other direct sales or network marketing company or (ii)

17  terminate or alter his or her business or contractual relationship with ZRII.

18        59.    After the execution of the IE Agreements, the DISTRIBUTOR

19  DEFENDANTS, and each of them, became active ZRII distributors and, in connection

20  therewith, were given access to ZRII's Confidential and Trade Secret Information, which

21  was confidential, proprietary, and a trade secret, representing the distillation of substantial

22  effort and the expenditure of substantial sums, and which was not generally known to the

23  public or within the industry.

24        60.    ZRII has performed all covenants and promises it was obligated to perform

25  in accordance with the terms of the agreements with the DISTRIBUTOR DEFENDANTS,

26  except those that have been waived or excused.

27        61.    Within the last six months, the DISTRIBUTOR DEFENDANTS, and each of

28  them, breached their agreements with ZRII by acts and omissions that included, without

1  limitation:

2          a.     Making negative, disparaging, untrue, and misleading comments

3  about ZRII, its products, owners, directors, officers, employees, or other distributors of

4  ZRII.

5          b.     Using ZRII's Confidential and Trade Secret Information, including its

6  genealogy, to compete with ZRII for the benefit of themselves and LIFEVANTAGE.

7          c.     Targeting and soliciting existing ZRII distributors and customers in

8  attempts to entice them to reduce or terminate their relationship with ZRII, and to reduce

9  or cease their sale of ZRII products, and instead replace those relationships and sales with

10  LIFEVANTAGE distributors and products.

11      62.    These wrongful acts have significantly benefited co-conspirator

12  LIFEVANTAGE, which has been able to capitalize on ZRII's past efforts in developing

13  ZRII's sales and distribution network. By using information misappropriated from ZRII,

14  DEFENDANTS have unlawfully solicited, and continue to unlawfully solicit, ZRII's

15  distributors and customers to abandon their contractual and business relationships with

16  ZRII for the same or similar relationships with DEFENDANTS. As described above,

17  some of these DEFENDANTS have recently sought to purchase ZRII, but ZRII did not

18  agree to sell the company. By now raiding ZRII's distributors and misappropriating

19  ZRII's Confidential and Trade Secret Information, these DEFENDANTS are attempting to

20  acquire illegally the ZRII assets and resources that they could not acquire legally and

21  consensually.

22      63.    Each of these wrongful acts has provided DEFENDANTS with an unfair

23  competitive advantage and has allowed DEFENDANTS to benefit from their unlawful use

24  of ZRII's Confidential and Trade Secret Information and from their unlawful and wrongful

25  breaches of their agreements with ZRII.

26      64.    As a direct result of DEFENDANTS' breaches of contract, ZRII has been

27  damaged in an amount which likely exceeds $75 million, with the exact amount to be

28  established at trial. These damages include, without limitation, losses to the value of

1   ZRII's Confidential and Trade Secret Information, loss of present and future business,

2   good will and profits, the disruption of contractual and client relationships, the loss of

3   future economic advantage, lost management time, and other costs and expenses.

4       65.     Furthermore, unless enjoined by this Court, DEFENDANTS will continue to

5   disrupt ZRII's relationships with its distributors and customers resulting in great and

6   irreparable injury to ZRII. ZRII has no adequate remedy at law for such acts and

7   threatened acts. ZRII thus requests that, during the pendency of this action, this Court

8   issue a preliminary injunction, and that after trial, this Court issue a permanent injunction

9   through the expiration of the non-solicitation periods of the applicable agreements,

10   restraining and enjoining the DISTRIBUTOR DEFENDANTS and applicable DOE

11   DEFENDANTS and their agents, employees, attorneys, and representatives, and anyone

12   acting at their direction or on their behalf, from (a) soliciting ZRII's distributors or

13   customers in breach of the IE Agreement, and (b) misusing ZRII's Confidential and Trade

14   Secret Information, including its downlines, customer lists, and genealogy.

15                          **SECOND COUNT**

16      **For Breach of the Implied Covenant of Good Faith and Fair Dealing**

17          **(Against Defendants DANIELS and NIEDERHAUSER)**

18       66.     ZRII incorporates by reference as though fully set forth herein all previous

19   allegations of this complaint.

20       67.     By virtue of the written agreements alleged above, the DISTRIBUTOR

21   DEFENDANTS had an implied covenant of good faith and fair dealing not to take any

22   action that would interfere with ZRII's enjoyment of the anticipated benefits of the

23   agreements.

24       68.     ZRII has performed the obligations owed to the DISTRIBUTOR

25   DEFENDANTS under the aforementioned contracts, except to the extent performance has

26   been waived or excused.

27       69.     ZRII is informed and believes and on that basis alleges that by engaging in

28   the wrongful conduct alleged above, including the misappropriation and misuse of ZRII's

1  Confidential and Trade Secret Information, the formation and operation of a competitive

2  enterprise, and by related conduct, the DISTRIBUTOR DEFENDANTS breached the

3  covenant of good faith and fair dealing implied in those agreements.

4       70.    As a proximate result of these breaches of the implied covenant of good faith

5  and fair dealing, ZRII suffered damages and loss of profits and good will in an amount far

6  in excess of the minimum jurisdiction of this Court in an amount presently unascertained

7  but which will be proven at trial.

8                                  **THIRD COUNT**

9                      **For Breach of Fiduciary Duty**

10          **(Against Defendants DANIELS and NIEDERHAUSER)**

11       71.    ZRII incorporates by reference as though fully set forth herein all previous

12  allegations of this complaint.

13       72.    By reason of the trust ZRII reposed in the DISTRIBUTOR DEFENDANTS,

14  they owed fiduciary duties to ZRII.

15       73.    By the actions and omissions described above, including without limitation,

16  planning the mass walk-out of employees and distributors to cripple ZRII,

17  misappropriating ZRII's computer files and interfering in its computer system, and

18  soliciting ZRII's distributors and customers away from ZRII, these DEFENDANTS

19  breached the fiduciary duties they owed to ZRII.

20       74.    As a direct and proximate result of the DISTRIBUTOR DEFENDANTS'

21  breaches of fiduciary duty, ZRII has suffered and will continue to suffer actual damages,

22  including, without limitation, costs incurred attempting to lost profits, lost productivity of

23  wrongfully solicited employees and distributors, costs attempting to mitigate damages,

24  costs incurred in seeking to recover its information, loss of use of the information, and

25  legal costs and expenses.  ZRII is entitled to an award of damages in an amount to proven

26  at trial, of not less than $75 million.

27       75.    The acts and omissions of DEFENDANTS were intentional, malicious, and

28  oppressive, and were done with the intent and design to damage ZRII.  For those reasons,

1   ZRII is entitled to recover punitive damages in an amount to be determined at the time of

2   trial, in an amount not less than three times its compensatory damages.

3                                    **FOURTH COUNT**

4              **For Intentional Interference with Contractual Relations**

5                            **(Against All Defendants)**

6       76.    ZRII incorporates by reference as though fully set forth herein all previous

7   allegations of this complaint.

8       77.    ZRII is informed and believes and on that basis alleges that at all times

9   relevant, DEFENDANTS, and each of them, were aware of the existence of the contracts

10  between ZRII, on the one hand, and its employees and distributors (including the

11  DISTRIBUTOR DEFENDANTS), on the other hand.  DEFENDANTS also knew of the

12  existence of agreements between ZRII and its vendors and customers, and acted with the

13  express purpose of interfering with those contracts.

14      78.    By acts and omissions that include, without limitation, those set forth above,

15  ZRII is informed and believes and on that basis alleges that DEFENDANTS, and each of

16  them, intentionally interfered with these existing contracts.  These acts and omissions

17  include, without limitation, encouraging ZRII distributors to terminate their relationship

18  with ZRII and sell LIFEVANTAGE's competing products, and using ZRII's Confidential

19  and Trade Secret Information to identify and encourage ZRII distributors to breach or

20  terminate their agreements with ZRII, for the benefit of LIFEVANTAGE.

21      79.    ZRII is informed and believes and on that basis alleges that DEFENDANTS,

22  and each of them, intended that their acts would disrupt ZRII's contractual agreements

23  with its distributors, vendors, customers, and employees, and knew that their acts were

24  substantially certain to cause ZRII to suffer consequential losses.

25      80.    As a proximate result of the acts of DEFENDANTS, and each of them, ZRII

26  has suffered, and will continue to suffer, compensatory and consequential damages,

27  including lost profits and good will, in an amount presently unascertained, but which ZRII

28  estimates likely exceeds $75 million, said sum to be proven at trial.

81.     The conduct of DEFENDANTS, and each of them, is and was despicable and malicious and has been carried out with a willful and conscious disregard of ZRII's rights.  Defendants acted with the deliberate intent to injure ZRII's business and to benefit their own economic interests at ZRII's expense.  ZRII is therefore entitled to recover punitive damages in an amount to be determined at trial, of not less than three times its compensatory damages.

82.     Unless enjoined by this Court, DEFENDANTS will continue to interfere with valid and existing agreements between ZRII and its distributors, vendors, customers, and employees, by acts and omissions that include, without limitation, encouraging ZRII distributors to breach the express and implied terms of their agreements with ZRII, by misusing ZRII's Confidential and Trade Secret Information, including information regarding ZRII's distribution networks and downlines, and by soliciting those networks and downlines to do business with and to act for the benefit of LIFEVANTAGE.

83.     These acts and omissions have caused and continue to cause irreparable injury to ZRII, and ZRII has no adequate remedy at law to redress this harm.  ZRII thus requests that during the pendency of this action, the Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining DEFENDANTS, their agents, employees, attorneys, representatives, and those acting in concert and participation with them, or anyone acting at their direction or on their behalf, from intentionally interfering with these contractual relationships and legally-protectable rights.

## FIFTH COUNT

### Intentional Interference with Prospective Economic Advantage

### (Against All Defendants)

84.     ZRII incorporates by reference as though fully set forth herein all previous allegations of this complaint.

85.     ZRII has and had valid existing and prospective economic interests with its current and prospective distributors, customers, and employees that had a probable future

1  economic benefit or advantage to ZRII.

2      86.    DEFENDANTS knew of these existing and prospective economic
3  relationships and of the economic benefit or advantage to ZRII from these relationships.

4      87.    DEFENDANTS' acts, as alleged above, which constitute an independently
5  actionable tort, were intended by each of the DEFENDANTS to interfere with ZRII's
6  ability to fairly compete in the marketplace.  ZRII further alleges that none of the acts by
7  DEFENDANTS was justifiable by any law or privilege of competition.

8      88.    ZRII is informed and believes and on that basis alleges that ZRII distributors
9  and customers would not have cancelled, repudiated, modified or terminated their
10  arrangements and relations with ZRII or diverted business from ZRII but for the wrongful
11  acts and omissions of DEFENDANTS, as alleged above.

12      89.    As a direct and proximate result of DEFENDANTS' unlawful conduct,
13  DEFENDANTS interfered with and disrupted ZRII's relationships with its existing and
14  prospective distributors and customers, and ZRII lost the economic benefit and advantage
15  reasonably expected from these relationships.

16      90.    As a direct and proximate result of defendants' conduct, ZRII has been and
17  will continue to be damaged, in an amount which ZRII estimates likely exceeds $75
18  million which includes, among other things, actual damages for loss of valuable
19  information, loss of competitive advantage gained by such information, loss of customers
20  and distributors, lost profits, loss of good will, lost management time, and costs incurred
21  attempting to mitigate damages.

22      91.    ZRII is informed and believes and on that basis alleges that in committing
23  the acts alleged herein, DEFENDANTS, and each of them, acted willfully and with the
24  express intent of benefiting themselves at ZRII's expense.  As a result of their oppression,
25  fraud and malice, ZRII is entitled to punitive damages in an amount to be determined at the
26  time of trial, of not less than three times its compensatory damages.

27      92.    Unless enjoined by this Court, DEFENDANTS will continue to disrupt
28  ZRII's business relationships with its distributors and customers, resulting in great and

1   irreparable injury to ZRII, for which ZRII has no adequate remedy at law.  ZRII thus

2   requests that, during the pendency of this action, this Court issue a preliminary injunction,

3   and that after trial, this Court issue a permanent injunction, restraining and enjoining

4   DEFENDANTS and their agents, employees, attorneys, and representatives, and anyone

5   acting at their direction or on their behalf, from (a) disparaging ZRII's products and

6   services to existing and potential distributors and customers; (b) using, disclosing, and

7   misappropriating ZRII's Confidential and Trade Secret Information, including information

8   regarding ZRII's distribution networks and downlines; and (c) encouraging ZRII's

9   distributors to terminate their contractual relationship with ZRII in order to enter into

10  business relationships with ZRII competitors, including LIFEVANTAGE; and (d)

11  otherwise intentionally interfering with ZRII's prospective economic advantage with its

12  distributors and customers.

### SIXTH COUNT

**Misappropriation of Proprietary Information and Trade Secrets**

**(Against All Defendants)**

16      93.     ZRII incorporates by reference as though fully set forth herein all previous

17  allegations of this Complaint.

18      94.     ZRII owns confidential and proprietary information that it uses in the

19  operation of its business, including but not limited to information relating to the identity,

20  telephone numbers, physical addresses, e-mail addresses, and sales patterns of ZRII's IEs.

21  This information is called "downline activity" information.  Thus, ZRII's Confidential and

22  Trade Secret Information includes its distribution network, downline and genealogy

23  information, commissions and sales reports, customer information, sales projections and

24  business forecasts, marketing strategies, product and research development information,

25  and costs of goods.

26      95.     The DISTRIBUTOR DEFENDANTS had knowledge and possession of

27  ZRII's Confidential and Trade Secret Information, acquired either through their former

28  relationship with ZRII or by surreptitiously obtaining this information from present or

Rutan & Tucker, LLP
attorneys at law

2199/027279-0001
992927.03 a02/27/09

-22-
COMPLAINT

1 former ZRII distributors or those acting in concert with them.

2      96.    ZRII's Confidential and Trade Secret Information derives independent

3 economic value because it is not known to the public, and it provides ZRII with a

4 competitive advantage in the marketplace. Recognizing the value of this information, ZRII

5 takes reasonable steps to preserve its secrecy. ZRII also requires all IEs with access to its

6 Confidential and Trade Secret Information to sign contracts that expressly communicate

7 the proprietary nature of ZRII's Confidential and Trade Secret Information and impose

8 restrictions on its dissemination and use.

9      97.    As alleged above, DEFENDANTS formed a conspiracy to misappropriate,

10 and have in fact misappropriated, ZRII's trade secrets, confidential and proprietary data

11 through their unauthorized possession, disclosure, and use of this information.

12      98.    Further, Defendant LIFEVANTAGE is knowingly using ZRII's Confidential

13 and Proprietary Information that it wrongfully obtained from the INDIVIDUAL

14 DEFENDANTS for its own unlawful advantage.

15      99.    ZRII is informed and believes and on that basis alleges that its damages as a

16 result of DEFENDANTS' unauthorized use of ZRII's Confidential and Trade Secret

17 Information and through the other illegal conduct alleged in this complaint likely exceeds

18 $75 million, said sum to be proven at trial. In addition, ZRII is informed and believes that

19 DEFENDANTS have obtained substantial business by wrongfully soliciting ZRII's former

20 distributors to modify or abandon business relationships with ZRII and to form new

21 relationships with competitors, including LIFEVANTAGE.

22      100.   Pursuant to section 3426.3 of the California Civil Code, ZRII is entitled to

23 recover as damages and restitution all of the value achieved from Defendants' use of the

24 misappropriated trade secrets including, without limitation: (a) all profits or revenues

25 achieved by them as a result of the misappropriation; (b) all intangible value (such as

26 goodwill) DEFENDANTS created as a result of such misappropriation; (c) all costs and

27 fees ZRII incurred in connection with the investigation and discovery of the

28 misappropriation and in this action; and (d) all other direct or indirect economic harm ZRII

1 incurs or economic gains DEFENDANTS achieve as a consequence thereof. ZRII seeks

2 an accounting of all direct or indirect uses of the trade secrets and data that

3 DEFENDANTS misappropriated and/or misused.

4     101.   ZRII further seeks the imposition of a constructive trust over all of the

5 benefits DEFENDANTS derive from such misappropriation and/or misuse, including,

6 without limitation, for all profits derived directly or indirectly therefrom.

7     102.   ZRII is informed and believes, and based thereon alleges, that

8 DEFENDANTS' acts of conspiracy and misappropriation were willful, wanton, malicious,

9 and oppressive in that DEFENDANTS misappropriated ZRII's trade secrets with the

10 deliberate intent to injure ZRII's business and improve their own. ZRII is therefore

11 entitled to an award of punitive damages pursuant to Civil Code § 3426.3 (c), and an award

12 of reasonable attorneys' fees and costs, as provided by Civil Code § 3426.4. ZRII has

13 been and will continue to be damaged by DEFENDANTS' misappropriation and misuse of

14 ZRII's Confidential and Trade Secret Information and, unless enjoined by this Court, ZRII

15 has and will continue to suffer great and irreparable injury for which it has no adequate

16 remedy at law. ZRII requests that, during the pendency of this action, this Court issue a

17 preliminary injunction, and that after trial, this Court issue a permanent injunction,

18 restraining and enjoining DEFENDANTS and their agents, employees, attorneys,

19 representatives, and anyone acting at their direction, on their behalf, or in concert or

20 participation with them, from using or disclosing ZRII's Confidential and Trade Secret

21 Information. ZRII further requests that this Court order Defendants to return such

22 information to ZRII.

23                        **SEVENTH COUNT**

24        **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**

25                        **(Against All Defendants)**

26     103.   ZRII incorporates by reference as though fully set forth herein all previous

27 allegations of this Complaint.

28     104.   Federal law makes it a criminal offense for individuals, including employees,

1    to steal computer information.  One such federal statute is the Computer Fraud and Abuse

2    Act, 18 U.S.C. § 1030 (the "CFAA").

3        105.   ZRII owns protected computers on which it maintains information, including

4    trade secret information.  ZRII's computers are used in interstate commerce.  The

5    computers are password-protected to restrict unauthorized access.  In addition, ZRII

6    employees and distributors must agree to maintain the confidentiality of ZRII's

7    confidential information, including electronic information.

8        106.   On information and belief, DEFENDANTS knowingly and intentionally

9    accessed ZRII's computers without authorization, and/or knowingly and intentionally

10   exceeded their authorized access.  DEFENDANTS' purpose in improperly accessing

11   ZRII's computers was to obtain information, including trade secret information, for

12   competitive purposes.  Therefore, when DEFENDANTS accessed ZRII's computers

13   without permission and/or exceeded their authorized access in order to steal ZRII's

14   computer information, DEFENDANTS had the intent to defraud ZRII, and furthered their

15   intended fraud by copying ZRII's computer files, which were of great value and use for

16   LIFEVANTAGE's competing business.

17       107.   On information and belief, LIFEVANTAGE knowingly received, used,

18   transmitted, and caused to be communicated, delivered, or transmitted and is continuing

19   after demand that it cease such actions, to so use, communicate, deliver, and transmit or

20   cause the same to be so communicated, the IE list and confidential and proprietary

21   information misappropriated by DEFENDANTS from ZRII's computers as alleged, to

22   other persons not entitled to receive the same and has willfully retained the same.

23       108.   DEFENDANTS' access to ZRII's computers and use of the Confidential and

24   Proprietary Information has caused loss and/or damage to ZRII far in excess of the

25   statutory minimum of $5,000, including but not limited to costs incurred in investigating

26   and responding to DEFENDANTS' unlawful conduct and other consequential damages.

27       109.   DEFENDANTS' actions constitute violations of at least the following

28   provisions of the CFAA: 18 U.S.C. § 1030(a)(2)(C), § 1030(a)(4), § 1030(a)(5)(A)(iii) and

1  § 1030(a)(5)(B)(i).

2  110.  Although the CFAA is a criminal statute, ZRII may maintain a civil action

3  against Defendants for damages, injunctive relief, and other equitable relief, under 18

4  U.S.C. § 1030(g).  DEFENDANTS' conduct has caused, and will continue to cause,

5  irreparable injury to ZRII .  ZRII has no adequate remedy at law.  Therefore, injunctive

6  relief is appropriate.

7  **EIGHTH COUNT**

8  **VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2510, et seq.**

9  **(Against All Defendants)**

10  111.  ZRII incorporates by reference as though fully set forth herein all previous

11  allegations of this Complaint.

12  112.  As alleged herein, ZRII is informed and believes that DEFENDANTS

13  intercepted, caused to be intercepted, or induced some other person to intercept

14  confidential electronic communications between ZRII and some of its employees,

15  distributors, customers, and agents, including FARLEY.

16  113.  ZRII is informed and believes that DEFENDANTS intentionally disclosed,

17  or endeavored to disclose these intercepted electronic communications, knowing that these

18  communications were obtained through unauthorized interception.

19  114.  ZRII is informed and believes that DEFENDANTS intentionally used or

20  endeavored to use the information contained in these electronic communications, knowing

21  that this information was obtained through unauthorized interception of electronic

22  communications.

23  115.  DEFENDANTS were not authorized to intercept these communications, to

24  cause them to be intercepted, or to induce some other person to intercept them.

25  116.  DEFENDANTS' illegal interception, disclosure, and use of these electronic

26  communications damaged ZRII.

27  117.  ZRII seeks damages, in an amount unknown at this time, but, pursuant to 18

28  U.S.C. section 2520(c)(2), the greater of (i) the sum of ZRII's actual damages and any

1    profits made by DEFENDANTS as a result of their violations; or (ii) statutory damages of

2    whichever is the greater of $100 per day for each day of violation or $10,000.

3          118.   Monetary damages alone would not afford adequate or complete relief to

4    ZRII.

5          119.   To the extent that DEFENDANTS continue to intercept these

6    communications, ZRII seeks injunctive relief prohibiting them and their employees and

7    agents from intercepting, or causing others to intercept these communications, for any

8    purpose.

9          120.   To the extent that DEFENDANTS possess copies of the information and/or

10   communications that were intercepted, ZRII seeks injunctive relief: (i) requiring

11   DEFENDANTS to turn over any and all such information and/or communications that they

12   have in their possession or control; and (ii) prohibiting DEFENDANTS from using

13   information and/or communications for any purpose.

14                            **NINTH COUNT**

15   **VIOLATION OF STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq.**

16                       **(Against All Defendants)**

17         121.   ZRII incorporates by reference as though fully set forth herein all previous

18   allegations of this Complaint.

19         122.   As alleged herein, ZRII is informed and believes that DEFENDANTS

20   accessed a facility through which ZRII's electronic communication service is provided,

21   and thereby gained confidential electronic communications between ZRII and its

22   employees, distributors, and agents, including but not limited to FARLEY, that were at

23   that time stored on the facility.

24         123.   DEFENDANTS were not authorized to access the facility through which

25   ZRII's electronic communications are provided.

26         124.   DEFENDANTS' accessing and subsequent use of ZRII's (and its agents' and

27   employees') electronic communications damages ZRII.

28         125.   ZRII seeks damages, in an amount unknown at this time, but, pursuant to 18

1   U.S.C. § 2707(b)-(c), the greater of (i) ZRII's actual damages as a result of

2   DEFENDANTS' wrongful access of electronic communications, according to proof at

3   trial; or (ii) $10,000, whichever is great.

4        126.   DEFENDANTS' acts were intentional, willful, and malicious.  ZRII is this

5   entitled to exemplary damages pursuant to 18 U.S.C. § 2707(c).

6        127.   To the extent DEFENDANTS continue to access the facility where ZRII's

7   electronic communications are stored, ZRII seeks injunctive relief prohibiting

8   DEFENDANTS from accessing that facility, for any purpose.

9        128.   To the extent that DEFENDANTS possess copies of the information and/or

10   communications that were accessed, ZRII seeks injunctive relief: (i) requiring

11   DEFENDANTS to turn over any and all such information and/or communications that they

12   have in their possession or control; and (ii) prohibiting DEFENDANTS from using

13   information and/or communications for any purpose.

14   **TENTH COUNT**

15   **VIOLATION OF CIVIL RICO, 18 U.S.C. § 1961, et seq.**

16   **(Against All Defendants)**

17        129.   ZRII incorporates by reference as though fully set forth herein all previous

18   allegations of this Complaint.

19        130.   As alleged herein, DEFENDANTS have conducted an enterprise through a

20   pattern of racketeering activity which included, but was not limited to, mail and wire fraud

21   under 18 U.S.C. §§ 1341 and 1343.  DEFENDANTS used the mails and interstate

22   electronic communications to defraud ZRII in furtherance of DEFENDANTS' scheme.

23        131.   DEFENDANTS' activity constitutes a pattern of racketeering activity within

24   the meaning of 18 U.S.C. § 1961.

25        132.   DEFENDANTS, and each of them, through this pattern of racketeering

26   activity, received income from former ZRII distributors and customers, and used or

27   invested this income, or part of the income, to establish or operate the enterprise within the

28   meaning of 18 U.S.C. § 1962(a).

133.   DEFENDANTS, and each of them, through this pattern of racketeering activity, acquired or maintained an interest in, or control of, the enterprise within the meaning of 18 U.S.C. § 1962(b).

134.   DEFENDANTS, and each of them, directed the affairs of the enterprise, and through this pattern of racketeering activity, conducted or participated in the conduct of the affairs of the enterprise pursuant to 18 U.S.C. § 1962(c).

135.   By reason of DEFENDANTS' violations of subdivisions (a), (b), and (c) of section 1962. ZRII has been injured in its business and has incurred substantial losses. ZRII is entitled to recover treble its damages, which damages are presently ascertained and subject to proof at trial, but at least $75 million.

## ELEVENTH COUNT

### CONVERSION

### (Against all Defendants)

136.   ZRII incorporates by reference as though fully set forth herein all previous allegations of this Complaint.

137.   As alleged above, ZRII is informed and believes that DEFENDANTS have computer files and other property and proprietary information from ZRII.

138.   ZRII is, and at all times relevant herein was, the owner of its property and assets, including its computer files, and ZRII was entitled to exclusive possession of its property and assets.

139.   As a direct and proximate result of DEFENDANTS' unlawful conversion, ZRII has suffered and will continue to suffer actual damages, including costs incurred attempting to mitigate damages, and legal costs and expenses.  ZRII is entitled to the immediate return of its property and to an award of damages in an amount to proven at trial.

140.   The acts and omissions of DEFENDANTS were intentional, malicious, and oppressive, and were done with the intent and design to damage ZRII.  For those reasons, ZRII is entitled to recover punitive damages in an amount to be determined at the time of

1   trial, of not less than three times its compensatory damages.

2                            **TWELFTH COUNT**

3   **Unfair Competition in Violation of Cal. Business & Professions Code § 17200**

4                           **(Against All Defendants)**

5      141.   ZRII incorporates by reference as though fully set forth herein all previous

6   allegations of this complaint.

7      142.   As previously alleged, DEFENDANTS have engaged in a variety of acts and

8   omissions that constitute unlawful, unfair, and fraudulent business practices in violation of

9   California Business and Professions Code section 17200, including without limitation: (a)

10   making unfair, deceptive and untrue statements to distributors and customers of ZRII;

11   (b) the unfair use of ZRII's Confidential and Trade Secret Information for the purpose of

12   gaining a competitive advantage and personal profit at ZRII's expense; and (c)

13   intentionally interfering with ZRII's existing contracts and prospective economic relations.

14      143.   ZRII is informed and believes and on that basis alleges that as a direct result

15   of these acts and omissions of DEFENDANTS, it has suffered and will continue to suffer

16   substantial and irreparable injury not compensable by monetary damages, such that a

17   temporary restraining order and preliminary and permanent injunction should issue against

18   DEFENDANTS. ZRII is informed and believed and on that basis alleges that unless

19   restrained by this Court, DEFENDANTS will continue the illegal acts described above,

20   including but not limited to retaining, misusing and misappropriating ZRII's proprietary

21   information and trade secrets.

22      144.   California's unfair competition law specifically authorizes injunctive relief to

23   prevent unfair business practices and permits restitution of any money or property of

24   ZRII's wrongfully obtained. ZRII is entitled to permanent injunctive relief from

25   DEFENDANTS' acts of unfair competition and, to the extent that DEFENDANTS, and

26   any of them, have utilized the misappropriated Confidential and Trade Secret Information

27   to their personal advantage and enrichment, ZRII is entitled to the reasonable value

28   thereof.

145.    Furthermore, ZRII is informed and believes and on that basis alleges that DEFENDANTS have profited and will, in the future, profit unjustly from their unfair business practices.  Pursuant to California Business and Professions Code section 17203, ZRII therefore seeks an award of restitution and disgorgement of DEFENDANTS' ill-gotten gains.

**THIRTEENTH COUNT**

**Unjust Enrichment and Restitution**

**(Against All Defendants)**

146.    ZRII incorporates by reference as though fully set forth herein all previous allegations of this complaint.

147.    DEFENDANTS have been unjustly enriched as a result of their misappropriation of ZRII's Confidential and Trade Secret Information, and by their other wrongful conduct alleged above.  It would be unjust for DEFENDANTS to retain any value they obtained as a result of their wrongful conduct.

148.    Accordingly, ZRII is entitled to full restitution of all amounts that DEFENDANTS have been unjustly enriched at ZRII's expense.

**PRAYER FOR RELIEF**

Plaintiff Zrii, LLC prays for judgment against DEFENDANTS as follows:

1.    For the equitable relief requested in this complaint, specifically:

a.    An order requiring the immediate return by DEFENDANTS of all ZRII property, including all ZRII Proprietary Information in their possession or control or the possession or control of others acting in concert with them;

b.    An order prohibiting DEFENDANTS from contacting or causing others to contact ZRII's IEs for the purpose of inducing them to enroll in other network marketing companies, or to otherwise alter their relationship with ZRII, for a period of at least six months from the date of the injunction;

c.    An order prohibiting Defendants from altering, destroying or spoliating in any way any information relevant to this action, including, but not limited to,

1   information on ZRII laptops, phones, personal digital assistants, ZRII Proprietary

2   Information, and all other tangible and electronic information that is in any way relevant to

3   this action;

4          d.     An order prohibiting DEFENDANTS from using or disclosing any

5   ZRII Proprietary Information and prohibiting DEFENDANTS from interfering with the

6   business of ZRII in any fashion.

7       2.     For general damages of at least $75 million, plus interest, according to proof

8   at trial;

9       3.     For lost profits according to proof at trial;

10       4.     For a reasonable royalty for DEFENDANTS' misappropriation of ZRII's

11   Confidential and Trade Secret Information;

12       5.     For restitution and disgorgement of all profits in an amount sufficient to

13   force DEFENDANTS to disgorge all ill-gotten gains;

14       6.     For punitive damages of at least three times its compensatory damages,

15   according to proof at trial;

16       7.     For reasonable attorneys' fees and costs incurred herein for DEFENDANTS'

17   willful and malicious trade secret misappropriation;

18       8.     For an accounting;

19       9.     For prejudgment interest; and

20       10.    For such other relief as the Court deems just and proper.

21   Dated: February 27, 2009               RUTAN & TUCKER, LLP

22

23                         By:

24                           Edson K. McClellan
                         Attorneys for Plaintiff

25                           ZRII, LLC, a Delaware limited liability
                         company

26

27

28

1

## DEMAND FOR JURY TRIAL

2        Zrii, LLC hereby demands a trial by jury.

3

4   Dated:  February 27, 2009                    RUTAN & TUCKER, LLP

5

6                                          By: _____

7                                              Edson K. McClellan
                                               Attorneys for Plaintiff
8                                              ZRII, LLC, a Delaware limited liability
                                               company

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Zrii Independent Executive or Zrii Preferred Customer?

### Zrii IE

"I want to own my own Zrii business!"

- Start a legitimate home-based business
- Earn extra income working part time or full time
- Create wealth commensurate with your effort
- Proven success system to follow
- Best-of-breed training program
- 100% 30-day Money-Back Guarantee
- Enjoy the health benefits of Zrii – The Original Amalaki

### Zrii PC

"I am excited to consume Zrii but have no desire to earn bonuses."

- Save 25% off the retail price
- Participate in Zrii's convenient AutoShip program
- Receive convenient home delivery via FedEx
- 100% 30-day Money-Back Guarantee

☑ **Independant Executive** (IE)
　✓ Start Kit **$49.95**

☐ **Preferred Customer** (PC)

## PERSONAL INFORMATION

First Name: *Tyler Daniels*

Last Name: *Retirement Options Inc*

Company Name (if applicable):

Social Security Number or Federal Tax ID (not required for Preferred Customer): *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*

Day Phone: *435-201-2264*

Evening Phone:

Cell Phone: *435-201-2264*

Co-applicant First Name (if applicable):

Co-applicant Last Name (if applicable):

Billing Address: *3230 N SPYGLASS court*

City: *FLORENCE*　State: *AZ*

Zip Code: *85232*　Country:

Email Address: *tddaniels33@yahoo.com*

☑ Shipping Address Same as Billing Address

Shipping Address:　　City:　　State:

Zip Code:　　Country:

EXHIBIT __1__, PAGE __34__

## AUTOSHIP

**Select Your Autoship Date.**

☑5th ☐ 10th ☐ 15th ☐ 20th ☐ 25th

After your first order, this is the date that your Autoship will be sent to you each month in the future.

Indicate Autoship Option:

| | | |
|---|---|---|
| ☐ _____ Zrii 4-pack  ($120.00) | ☑ _____ Zrii 4-pack plus Zrii Fridge Pack  ($255.00) |
| ☐ _____ Zrii Fridge Pack ($135.00) | ☐ _____ Additional 4 packs  ($120.00 each) |
| ☐ _____ Zrii 8-pack ($240.00) | ☐ _____ Additional Fridge Packs  ($135.00 each) |
| ☐ _____ 2 Zrii Fridge Packs ($270.00) | Total: *255 —* |

## INDEPENDENT EXECUTIVE ENROLLMENT

**Select Optional Business Builder Kit***

| ☐ **Essentials Pack** | **$499.95** | Essentials Office Pack: | PV **400.00** |
|---|---|---|---|
| Start Kit | $49.95 | 20 DVD Brochures | |
| 4-pack | $120.00 | 100 Sticker Labels | |
| 2 Fridge Packs | $270.00 | Zrii Padfolio | |
| | | Zrii Pen | |
| | | Training CD | |

| ☐ **Pro Pack** | **$999.95** | Pro Office Pack: | PV **800.00** |
|---|---|---|---|
| Start Kit | $49.95 | 50 DVD Brochures | |
| 8-pack | $240.00 | 100 Sticker Labels | |
| 4 Fridge Packs | $540.00 | Zrii Padfolio | |
| | | Zrii Pen | |
| | | Training CD | |
| | | 250 Business Cards | |
| | | Zrii Business Bag | |

| ☑ **Premium Pack** | **$1499.95** | Premium Office Pack: | PV **1,200.00** |
|---|---|---|---|
| Start Kit | $49.95 | 50 DVD Brochures | |
| 8-pack | $240.00 | 100 Sticker Labels | |
| 4-pack | $120.00 | Zrii Padfolio | |
| 6 Fridge Pack | $810.00 | Zrii Pen | |
| | | Training CD | |
| | | 250 Business Cards | |
| | | Zrii Business Bag | |
| | | Home Business Tax Guide | |
| | | Zrii Business Shirt | |
| | | 100 Thank you cards w/ env. | |
| | | 2 Annual Convention Tickets | |

**Confirm Your Enroller**

Your enroller is the individual that enrolled you into Zrii. They will provide support to you as a new IE.

Name: _____

Phone: _____

**Confirm Your Placement**

Name: _____ *Jason Domingo*

Phone: _____ *916 641 5652*

**Start kit** (49.95) _____

**Monthly Autoship** _____

**Business Builder Kit*** _____

*If ordering a Business Builder Kit, your Autoship order will not be included with your first order but will be shipped on the AutoShip date you selected during the next calendar month.

**Sales tax and shipping will be added based on shipping location.

**TOTAL ORDER**** _____

EXHIBIT _*1*_ PAGE _*35*_

PAYMENT METHOD

☐ Pay by Credit Card

Card Number

Expires

Name On Card

☐ Pay by Direct Withdrawal

Name on Account
*RETIREMENT   OPTIONS   INC*

Bank Account Number (9 digit number)

Bank Routing Number

## COMMISSION PREFERENCE

☐ Pay by Direct Deposit

Name on Account
*RETIREMENT   OPTIONS   INC*

Bank Account Number (9 digit number)

Bank Routing Number

☐ Pay by Check   (A $3.00 check processing fee will be charged for all mailed checks.)

By signing this agreement, I authorize Zrii to charge my account or credit card for the items I have indicated I would like to purchase. I understand that my account or credit card will not be billed until product is ready to be shipped on or about October 1, 2007. I understand that I will be subject to terms and conditions of a Zrii Distributorship and Zrii's policies and procedures to be published on or around October 1, 2007. I will have the right to cancel my Distributorship and return my order within 30 days of my receipt of the order, and receive a full refund if I do not agree to be bound by Zrii's terms and conditions and policies and procedures. If I do not send written notice of my intentions to terminate my Zrii Distributorship to the company within 30 days of my receipt of the order, I understand that I will be subject to Zrii's terms and conditions and policies and procedures.

_____     7-14-07          _____
Applicant's Signature          Date             Co-Applicant s Signature        Date

The Autoship Program: If you indicated that you wish to participate in Autoship by selecting an Autoship date and an Autoship option, the quantity of that item specified will be sent to you every month, and your credit card or bank account will automatically be charged for the appropriate amount, plus shipping, handling, and applicable sales tax. You may cancel your Autoship order at any time by submitting your written cancellation via e-mail to customerservice@zrii.com or by mailing or faxing your cancellation notice to Zrii at 14183 S Minuteman Dr Suite 201, Draper, UT 84020, or 801.878.8099.

Payment Authorization. I authorize Zrii to withdraw payment for my Autoship order(s) from my credit card or bank account identified on this Agreement. Zrii is authorized to withdraw payment equal only to the amount of the products plus applicable sales tax, shipping and handling of the Autoship orders I have selected. I agree to pay a $20.00 service fee in the event a check or charge is returned for any reason. I have the right to have the amount of any erroneous withdrawal deposited into my account as soon as reasonably possible and upon proper notification to Zrii. I shall hold Zrii harmless for all special or consequential damages, whether direct or indirect, resulting from any wrongful debit to my account.

Autoship Term: Your Autoship participation and payment authorization will remain in effect until you cancel as indicated above. Notice of cancellation must be received at least five (5) days prior to the Autoship Date you have selected in order to avoid charges for that month. If a cancellation notice is not timely received, cancellation will become effective in month following the month in which your notice of cancellation is received by Zrii.

EXHIBIT __1__, PAGE _36_

## Zrii Independent Executive or Zrii Preferred Customer?

### Zrii IE

"I want to own my own Zrii business!"

- Start a legitimate home-based business
- Earn extra income working part time or full time
- Create wealth commensurate with your effort
- Proven success system to follow
- Best-of-breed training program
- 100% 30-day Money-Back Guarantee
- Enjoy the health benefits of Zrii – The Original Amalaki

### Zrii PC

"I am excited to consume Zrii but have no desire to earn bonuses."

- Save 25% off the retail price
- Participate in Zrii's convenient AutoShip program
- Receive convenient home delivery via FedEx
- 100% 30-day Money-Back Guarantee

☑ **Independant Executive** (IE)
✓ Start Kit **$49.95**

☐ **Preferred Customer** (PC)

## PERSONAL INFORMATION

| | |
|---|---|
| First Name *Marcell* | Co-applicant First Name (if applicable) |
| Last Name *Niederhauser* | Co-applicant Last Name (if applicable) |
| Company Name (if applicable) *3420 w 6800 ? Convergane Marketing* | Billing Address |
| Social Security Number or Federal Tax ID (not required for Preferred Customer) *528 80 4452* | |
| Day Phone *435 243 4584* | City               State |
| Evening Phone *435 232 9700* | Zip Code               Country |
| Cell Phone *435 232 9700* | Email Address |

☐ Shipping Address Same as Billing Address

Shipping Address

*3420 w 6800s*

City *Wellsville*               State *ut*

Zip Code *84339*               Country *usa*

EXHIBIT *2*, PAGE *37*

## ZRII AUTOSHIP

**Select Your Autoship Date.**

☒ 5th  ☐ 10th  ☐ 15th  ☐ 20th  ☐ 25th

After your first order, this is the date that your Autoship will be sent to you each month in the future.

Indicate Autoship Option:

| | |
|---|---|
| ☐ _____ Zrii 4-pack ($120.00) | ☒ _____ Zrii 4-pack plus Zrii Fridge Pack ($255.00) |
| ☐ _____ Zrii Fridge Pack ($135.00) | ☐ _____ Additional 4 packs ($120.00 each) |
| ☐ _____ Zrii 8-pack ($240.00) | ☐ _____ Additional Fridge Packs ($135.00 each) |
| ☐ _____ 2 Zrii Fridge Packs ($270.00) | Total: _255.__ |

## INDEPENDENT EXECUTIVE ENROLLMENT

**Select Optional Business Builder Kit***

| | | | |
|---|---|---|---|
| ☐ **Essentials Pack** | **$499.95** | Essentials Office Pack: | PV **400.00** |
| Start Kit | $49.95 | 20 DVD Brochures | |
| 4-pack | $120.00 | 100 Sticker Labels | |
| 2 Fridge Packs | $270.00 | Zrii Padfolio | |
| | | Zrii Pen | |
| | | Training CD | |

**Confirm Your Enroller**

Your enroller is the individual that enrolled you into Zrii. They will provide support to you as a new IE.

Name: *Retirement Options*

Phone: *435-201-2264*

| | | | |
|---|---|---|---|
| ☐ **Pro Pack** | **$999.95** | Pro Office Pack: | PV **800.00** |
| Start Kit | $49.95 | 50 DVD Brochures | |
| 8-pack | $240.00 | 100 Sticker Labels | |
| 4 Fridge Packs | $540.00 | Zrii Padfolio | |
| | | Zrii Pen | |
| | | Training CD | |
| | | 250 Business Cards | |
| | | Zrii Business Bag | |

**Confirm Your Placement**

Name: *Retirement Options*

Phone: *435 201 0264*

| | | | |
|---|---|---|---|
| ☑ **Premium Pack** | **$1499.95** | Premium Office Pack: | PV **1,200.00** |
| Start Kit | $49.95 | 50 DVD Brochures | |
| 8-pack | $240.00 | 100 Sticker Labels | |
| 4-pack | $120.00 | Zrii Padfolio | |
| 6 Fridge Pack | $810.00 | Zrii Pen | |
| | | Training CD | |
| | | 250 Business Cards | |
| | | Zrii Business Bag | |
| | | Home Business Tax Guide | |
| | | Zrii Business Shirt | |
| | | 100 Thank you cards w/ env. | |
| | | 2 Annual Convention Tickets | |

Start kit (49.95)
___ 49.95

**Monthly Autoship**

**Business Builder Kit***

**TOTAL ORDER***

*If ordering a Business Builder Kit, your Autoship order will not be included with your first order but will be shipped on the AutoShip date you selected during the next calendar month.

**Sales tax and shipping will be added based on shipping location.

EXHIBIT _2_, PAGE _38_

## PAYMENT METHOD

☒ Pay by Credit Card

Card Number _3715 532658 41006_

Expires _11/08_

Name On Card _Marcell Wiedelhauser_

☐ Pay by Direct Withdrawal

Name on Account _____

Bank Account Number (9 digit number) _____

Bank Routing Number _____

## COMMISSION PREFERENCE

☒ Pay by Direct Deposit

Name on Account _Convergenc Marketing LLC_

Bank Account Number (9 digit number) _____

Bank Routing Number _____

☐ Pay by Check   (A $3.00 check processing fee will be charged for all mailed checks.)

By signing this agreement, I authorize Zrii to charge my account or credit card for the items I have indicated I would like to purchase. I understand that my account or credit card will not be billed until product is ready to be shipped on or about October 1, 2007. I understand that I will be subject to terms and conditions of a Zrii Distributorship and Zrii's policies and procedures to be published on or around October 1, 2007. I will have the right to cancel my Distributorship and return my order within 30 days of my receipt of the order, and receive a full refund if I do not agree to be bound by Zrii's terms and conditions and policies and procedures. If I do not send written notice of my intentions to terminate my Zrii Distributorship to the company within 30 days of my receipt of the order, I understand that I will be subject to Zrii's terms and conditions and policies and procedures.

_[signature]_ 07/14/07

Applicant's Signature          Date

_____          _____

Co-Applicant's Signature          Date

The Autoship Program. If you indicated that you wish to participate in Autoship by selecting an Autoship date and an Autoship option, the quantity of that item specified will be sent to you every month and your credit card or bank account will automatically be charged for the appropriate amount, plus shipping, handling, and applicable sales tax. You may cancel your Autoship order at any time by submitting your written cancellation via e-mail to customerservice@zrii.com or by mailing or faxing your cancellation notice to Zrii at 14183 S Minuteman Dr, Suite 201, Draper, UT 84020, or 801.878.8099.

Payment Authorization. I authorize Zrii to withdraw payment for my Autoship orders from my credit card or bank account identified on this Agreement. Zrii is authorized to withdraw payment equal only to the amount of the products plus applicable sales tax, shipping and handling of the Autoship orders I have selected. I agree to pay a $20.00 service fee in the event a check or charge is returned for any reason. I have the right to have the amount of any erroneous withdrawal deposited into my account as soon as reasonably possible and upon proper notification to Zrii. I shall hold Zrii harmless for all special or consequential damages, whether direct or indirect, resulting from any wrongful debit to my account.

Autoship Term: Your Autoship participation and payment authorization will remain in effect until you cancel as indicated above. Notice of cancellation must be received at least five (5) days prior to the Autoship Date you have selected in order to avoid charges for that month. If a cancellation notice is not timely received, cancellation will become effective in month following the month in which your notice of cancellation is received by Zrii.

EXHIBIT _2_ , PAGE _39_

CIVIL COVER SHEET **ORIGINAL**

**BY FAX**

℠ JS 44 (Rev. 12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ZRII, LLC, a Delaware limited liability company

**DEFENDANTS**
LIFEVANTAGE CORPORATION, a Colorado corporation; TYLER DANIELS, an individual; MARCELLA NEUBERHAUSER, an individual;

(b) County of Residence of First Listed Plaintiff **Delaware**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **San Diego County**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Rutan & Tucker, LLP
Edson K. McClellan (SBN 199541)
611 Anton Blvd., 14th Floor
Costa Mesa, CA 92626
(714) 641-5100

Attorneys (If Known)

'09 FEB 27 PM 4: 15

'09 CV 0405 L RBB

DEPUTY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal Injury Product | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans | Liability | Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. §1030; 18 U.S.C. §1061; 18 U.S.C. §2510; 18 U.S.C. §2701; 28 U.S.C. §1332
Brief description of cause:
Defendants violated federal anti-hacking, wiretapping and racketeering laws and other wrongful conduct

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $     CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):     JUDGE **see Notice of Related Case**     DOCKET NUMBER

DATE
February 27, 2009     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # 160556     AMOUNT 350.     APPLYING IFP     JUDGE     MAG. JUDGE

CR 2/27/09

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**#  160556    — SR**

**February 27, 2009**
**16:17:13**

**Civ Fil Non-Pris**
USAO #.: 09CV0405
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC#105125

**Total-> $350.00**

FROM: ZRII V. LIFEVANTAGE CORP.
      CIVIL FILING